**David ROBERTS, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

**No. 3–1079A295.**

Court of Appeals of Indiana,
Third District.

April 27, 1981.

 

Harriette Bailey Conn, Public Defender, Ihor N. Boyko, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

David Roberts appeals the denial of his petition for post-conviction relief. At his trial by jury, Roberts was convicted of robbery. In his petition and at his post-conviction relief hearing (hearing), Roberts alleged several errors regarding his trial. The following three issues are now urged upon appeal:

(1) Whether the failure of the trial court to *sua sponte* instruct the jury—with respect to the limited purpose of evidence going to the credibility of Roberts—was fundamental error;

(2) Whether alleged prosecutorial misconduct mandates a new trial; and,

(3) Whether Roberts was provided with adequate legal representation.

We affirm the trial court in denying the petition.

Pursuant to this Court's Order,[1] the judge presiding over the hearing made the following findings and conclusions:[2]

## "FINDINGS OF FACT

"1. That on the 13th day of January, 1975, [trial counsel] was appointed to represent the defendant at public expense.

"2. That subsequent to appointment prior to trial, the defense counsel conferred with him on at least four (4) occasions.[3]

"3. That in preparation for trial, defense counsel was made privy to and given copies of all materials contained in the prosecutor's file.

"4. That after preliminary negotiations, defense counsel conveyed to the defendant herein, an offer by the State of Indiana of a 'plea bargain' for a term of ten (10) years upon his plea of guilty, which the defendant at that time did not accept.

"5. That on the date of trial the plea was discussed but pursuant to a local court rule of the Honorable James E. Letsinger, no 'plea bargains' would be accepted within fourteen (14) days of trial.

"6. That [trial counsel] conducted a vigorous cross examination of the two (2) witnesses to-wit: Dino Della Santina and Kenneth Mobley, on the question of the identity of the alleged robber.

"7. That on direct examination the defendant testified that on the date in question he was in the vicinity of the site of the alleged robbery.

"8. That the defendant testified at his Post Conviction Relief hearing that he was driving or a passenger in an automobile which was identified by the alleged victim and eye witness as the automobile in which the robber fled the scene.

"9. That no defense of alibi was raised at trial or on testimony at the Post Conviction Relief hearing, therefore, the presence of the defendant's mother, sister or the alleged owner of the automobile would have been of no probative value.

"10. That an attack on the credibility of an identification from a line-up in which the defendant was the only person wearing a coat which fit the description of the coat worn by the alleged robber was vigorously pursued.

"11. That the defendant's mother at the time and date of trial was suffering from an extreme hearing deficiency which precluded her ability to converse on the telephone and would have greatly impaired her ability to testify as a witness if called.

"12. That the prosecuting attorney in his closing statement made the following comment:

'The fact that this Defendant has a prior conviction of unarmed robbery, plus the evidence you heard today, I think is coming to a more logical conclusion that David Roberts is moving onward and upward from unarmed robbery to armed robbery.'

to which no objection was made.

---

1. *Roberts v. State* (1980), Ind.App., 406 N.E.2d 359.

2. Only those findings and conclusions pertinent to the issues here on appeal are repeated.

3. We have carefully reviewed the record and believe this finding to be in error. The record seems to support a finding of three (3) occasions.

"13. That the defendant's testimony subjected him to possible impeachment on a prior unrelated robbery conviction and as a matter of trial strategy, defense counsel elicited an admission from the stand by the defendant of said conviction.

"14. That no instruction concerning the use of a prior conviction for impeachment purposes only was tendered by the defendant to the Court."

\*     \*     \*     \*     \*     \*

## "CONCLUSIONS OF LAW

"The Court, as a result of the above Findings of Fact, now makes the following Conclusions of law:

"1. That the defense of defendant-petitioner herein did not constitute a 'mockery of justice' and was competent and ably presented on all pertinent points.

"2. That the alleged misconduct of the prosecuting attorney in his closing argument did not constitute grounds for mistrial.

"3. That the Court's failure to instruct on the question of use of prior unrelated conviction as impeachment only was due to a failure to tender said instructions by the defendant but which failure did not arise to the level of a deprivation of the defendant's right to a fair and impartial trial."

■ Prior to addressing the issues, we note the proper standard of review for this Court upon the appeal of a judgment denying the petition for post-conviction relief. The petitioner in a post-conviction relief proceeding has the burden to prove his grounds for relief by a preponderance of the evidence. The trial court judge hearing the petition is the sole judge of the credibility of witnesses and the weight of the evidence. The determination will be reversed upon appeal only where the evidence is without conflict and leads unerringly to a result other than the one reached by the trial court judge. *Johnson v. State* (1980),

Ind., 406 N.E.2d 1170; *Fuller v. State* (1979), Ind., 391 N.E.2d 1137.

I.

Failure to Instruct

■ Roberts first alleges fundamental error occurred since the trial court failed to *sua sponte* instruct the jury that the purpose of evidence of prior convictions was limited to the issue of Roberts' credibility.[4] Roberts argues "the lack of such a cautionary instruction at his trial was fundamental error requiring reversal of his conviction and new trial, since the error was so prejudicial that he could not have had a fair trial." The only authority cited for this position is *Underwood v. State* (1977), Ind. App., 367 N.E.2d 4. The *Underwood* Court found one jury instruction by the trial court to not only take from the jury its function of determining facts, but to shift the burden of proof from the State to the defendant. As contrasted to the present alleged error, this clearly was "fundamental error."

■ Fundamental error is "error so prejudicial to the rights of the Appellant that he could not have had a fair trial." *Grier v. State* (1968), 251 Ind. 214, 217, 240 N.E.2d 494, 496. Or, stated in other words, fundamental error contemplates "blatant error" which if not corrected would deny the appellant "fundamental due process." *Webb v. State* (1972), 259 Ind. 101, 106, 284 N.E.2d 812, 815. This Court addresses allegations of fundamental error upon a two-fold analysis. *Grimes v. State* (1976), 170 Ind.App. 525, 353 N.E.2d 500; *Winston v. State* (1975), 165 Ind.App. 369, 332 N.E.2d 229. First, we consider "the character of the error and its effect on the trial as a whole." *Grimes, supra*, 170 Ind.App. at 534, 353 N.E.2d at 507. Secondly, we consider "the function of the proper objection requirement." *Id.* at 535, 353 N.E.2d at 507.

4. Roberts failed to object to the fact no instruction was given and failed to tender such instruction to the trial court. Thus, but for the doctrine of fundamental error, this issue would be deemed as waived. *Pavone v. State* (1980), Ind., 402 N.E.2d 976; *Grier v. State* (1968), 251 Ind. 214, 240 N.E.2d 494; *Grimes v. State* (1976), 170 Ind.App. 525, 353 N.E.2d 500.

■ Upon direct examination at trial, Roberts testified he had a prior conviction for robbery. At the hearing, it was clearly established that Roberts' trial counsel advised him to so testify upon direct examination as trial strategy. Trial counsel testified there were two underlying purposes for this strategy. The first purpose was to demonstrate to the jury that Roberts was being honest and was not trying to hide anything. The second purpose was to preclude the prosecutor on cross-examination from making the damaging "revelation" of a prior conviction. Testimony regarding Roberts' prior conviction was brief. It occurred only in Roberts' direct examination and immediately prior to Roberts telling the jury: "I am not guilty of this offense." The prosecutor did not cross-examine Roberts on the issue of his prior conviction. The prior conviction was not again brought up at the trial until the end of the State's final argument where it was briefly mentioned.[5] Neither at the time of its introduction nor at the close of the trial did Roberts seek from the trial court a limiting instruction on this evidence.

■ The failure of the trial court to *sua sponte* instruct the jury on the limited purpose of Roberts' trial strategy is not error. Roberts' fundamental error argument is not supported by the record of the proceedings which reflects fundamental due process. The singular reference to Roberts' prior conviction during trial did not pervade "the climate of the proceedings below, *viewed as a whole*, depriving the defendant of any realistic opportunity for a fair hearing." *Winston, supra*, 165 Ind.App. at 375, 332 N.E.2d at 232.

We further note "[t]he policy requiring timely and specific objections to jury instructions is one which weighs heavily against invocation of the fundamental error doctrine." *Grimes, supra*, 170 Ind.App. at 535, 353 N.E.2d at 508. This policy consideration applies equally to the failure of the defendant to tender an instruction or to object to the lack of such instruction. *See Grimes, supra*. This consideration is clearly answered in the present case. If this alleged error had been pointed out at trial, the judge likely would have corrected it.

We find further implicit support in the following cases which did not find fundamental error where the trial court failed to *sua sponte* instruct the jury upon an issue arising at trial. *Jackson v. State* (1980), Ind., 402 N.E.2d 947 (trial court did not instruct that certain testimony solely related to credibility); *Harris v. State* (1978), 268 Ind. 594, 377 N.E.2d 632 (trial court failed to instruct on self defense); *Kelsie v. State* (1976), 265 Ind. 363, 354 N.E.2d 219, *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 541 (trial court failed to instruct on lesser included offense); *Robinson v. State* (1974), 262 Ind. 463, 317 N.E.2d 850 (trial court failed to instruct upon limited purpose of hearsay evidence); *Hunt v. State* (1973), 260 Ind. 375, 296 N.E.2d 116 (trial court failed to instruct upon defendant's failure to testify).

Having reviewed the entire record—and this alleged error within the context of the trial as a whole—we cannot say the trial court's failure to instruct was fundamental error.

## II.

### Prosecutorial Misconduct

Roberts next alleges the following statement made during final argument represents prosecutorial misconduct requiring a new trial:[6]

"The fact that this Defendant has a prior conviction of unarmed robbery, plus the evidence you heard today, I think is coming to a more logical conclusion that

---

5. See this Opinion, Part II, *infra*.

6. Roberts did not object to this statement at the trial nor upon his original appeal. Therefore, the issue would be considered waived had the State contested it at the hearing. *Holt v. State* (1980), Ind., 408 N.E.2d 538; *Bryant v.*

State (1980), Ind., 406 N.E.2d 1177. The State, however, first raised this issue in its appellee's brief. The issue of waiver must be raised by the State at the hearing. *Brown v. State* (1974), 261 Ind. 619, 308 N.E.2d 699. Thus, we address the merits of this issue.

David Roberts is moving onward and upward from unarmed robbery to armed robbery."

Roberts argues this statement is misconduct since it is "in effect inviting the jury to find him guilty based on a prior unrelated robbery conviction." Roberts further argues this requires a new trial. We do not agree.

The Indiana Supreme Court set forth the proper standard of review for alleged prosecutorial misconduct in *Maldonado v. State* (1976), 265 Ind. 492, 498–99, 355 N.E.2d 843, 848. The Court must make two determinations: 1) whether the act in issue is in fact misconduct; and, 2) whether the act placed the defendant in a position of grave peril.

Certainly, "[i]t is misconduct for a prosecutor to request a jury to convict a defendant for any reason other than his guilt." *Maldonado, supra* 265 Ind. at 500, 355 N.E.2d at 849. Those statements disapproved by the Supreme Court, however, invite the jury to consider factors other than guilt. *See, e.g., Maldonado, supra* (statement implying that conviction of defendant would be community service); *Warner v. State* (1976), 265 Ind. 262, 354 N.E.2d 178 (statement implying conviction of defendant would avert tyranny); *Clark v. State* (1976), 264 Ind. 524, 348 N.E.2d 27, *cert. denied*, 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711 (statement that jury should disregard defense presented because it would set a "precedent" which "would be the end of criminal convictions").

In the present case, the clear import of the prosecutor's statement was not to call upon the jurors to convict Roberts on the basis of the prior conviction. Though the propriety of this statement may be questioned, it cannot be said to be misconduct under case law or under the Indiana Code of Professional Responsibility. *See Maldonado, supra*, 265 Ind. at 498, 355 N.E.2d at 848.

Furthermore, this statement clearly did not place Roberts in a position of grave peril. The grave peril standard "is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct." *Id.* at 499, 355 N.E.2d at 848. The statement was an isolated incident occurring near the close of the prosecutor's final argument. The statement followed strong and convincing evidence establishing Roberts as the perpetrator of the robbery. We find the statement in the context of the record as a whole to have had little probable persuasive effect upon the jury. We find additional support in *Clark v. State, supra*. In *Clark*, the Supreme Court found statements by the prosecutor in final argument that the defendant "was not a nice guy and was not a babe in the woods," and that he "had pulled off a professional taxi robbery with precision" would have little persuasive effect upon the jury. *Id.* at 536, 348 N.E.2d at 35. Having found neither misconduct nor grave peril, we affirm the trial court's finding of no grounds for a mistrial.

### III.

#### Adequate Legal Representation

Finally, Roberts argues he was not provided adequate legal representation at his trial. To support his argument, Roberts makes the following allegations: 1) his counsel brought out a prior unrelated conviction during direct examination; 2) his counsel failed to object when the prosecutor made the "onward and upward" statement during final argument; 3) his counsel failed to seek a limiting instruction regarding the purpose of the evidence of the prior conviction; 4) his counsel—though meeting with him several times—spent only a total time of 30 minutes with him prior to the trial; 5) his counsel failed to diligently pursue a plea bargain agreement; and, 6) his counsel failed to contact witnesses.

Competency of counsel revolves around the particular facts of each case. There is a presumption upon appeal that counsel was competent. This presumption is overcome only by strong and convincing evidence. This evidence must establish counsel so failed to provide the defendant

with adequate legal representation that the trial resulted in a "mockery of justice." *Cottingham v. State* (1978), 269 Ind. 261, 379 N.E.2d 984; *Lyles v. State* (1978), Ind. App., 382 N.E.2d 991. As stated by the Court in *Blackburn v. State* (1973), 260 Ind. 5, 22, 291 N.E.2d 686, 696:

> "The mere fact that another attorney might have conducted the defense differently is not sufficient to require a reversal ... Isolated poor strategy, bad tactics, a mistake, carelessness, or inexperience does not necessarily amount to ineffective counsel unless, taken as a whole, the trial was a mockery of justice....
>
> "[A] reviewing court should look to the 'totality of circumstances' to determine whether or not trial counsel was competent....
>
> "A reviewing court ought not second guess matters of judgment or trial strategy or even mistakes. A poor result alone does not amount to denial of adequate assistance of counsel."

We note the first three allegations of incompetency listed above can be categorized as "trial tactics" or "strategy." Deliberate choices by attorneys for some tactical or strategic reason does not establish ineffective representation even though such choice may be subject to some criticism or even if it does turn out to be detrimental to the defendant. *Morris v. State* (1980), Ind., 409 N.E.2d 608.

As previously discussed,[7] it was established at the hearing that Roberts' counsel deliberately brought out the fact of Roberts' prior conviction on direct examination. Counsel clearly stated this was a trial strategy. Counsel's failure to tender a limiting instruction on Roberts' prior conviction evidence as well as his failure to object to the prosecutor's statement during final argument also could well be trial tactics. For example, both Roberts' statement and the prosecutor's statement were limited incidents in the context of the trial considered as a whole. Counsel well may have desired to avoid drawing additional attention to

Roberts' prior conviction by making objections and filing instructions on that very issue. This Court will not second-guess the strategy or trial tactics of counsel. *Loman v. State* (1976), 265 Ind. 255, 354 N.E.2d 205; *Cook v. State* (1980), Ind.App., 403 N.E.2d 860.

We further note counsel's revealing of defendant's entire criminal history is a recognized trial tactic. *Morris v. State, supra; Baker v. State* (1980), Ind., 403 N.E.2d 1069; *Wynn v. State* (1976), 265 Ind. 133, 352 N.E.2d 493. It is also recognized that the failure of counsel to object to improper remarks by the prosecutor is not proof of incompetence. *Wynn supra; Woods v. State* (1970), 225 Ind. 483, 265 N.E.2d 244. And, even assuming an objection would have been sustained, this Court looks at the totality of circumstances to determine whether counsel was competent. *Robertson v. State* (1974), 262 Ind. 562, 319 N.E.2d 833.

On the fourth allegation listed above, Roberts testified at the hearing his counsel met with him several times prior to trial but only for a total time of 30 minutes. At this same hearing, his counsel testified he could not remember how much time he had spent with Roberts, but he had talked with him on several occasions. In *Baker v. State, supra*, the post-conviction petitioner contended—without supporting proof—that his counsel only met with him twice for a total time of less than 40 minutes. In denying the petition, the court pointed out that, even if the allegation was true, the petitioner failed to show how he was thereby prejudiced. We are faced with the identical situation in the present case. Roberts failed both in establishing supporting proof and prejudice. Minimal consultation does not necessarily show ineffective representation. *Wynn v. State, supra; Nettles v. State* (1975), 164 Ind.App. 205, 327 N.E.2d 625.

Roberts further contends that his counsel was not diligent in pursuing a plea bargain agreement. Roberts testified his counsel only told him of a possible plea bargain

---

7. See this Opinion, Part I, *supra*.

agreement just prior to trial and that he did not have time to consider the offer. Roberts' counsel testified at the hearing that— though he did not recall the particularities of the *Roberts* case—he always pursued the possibility of a plea bargain agreement and related any offers from the prosecutor immediately. He also testified, however, that as he recollected, Roberts was not willing to accept any plea bargain until the day of the trial. At that time it was too late to accept since the local criminal court rule required plea bargaining to be completed prior to the date of the trial. From the findings of fact and conclusions of law, it is apparent the judge chose to believe Roberts' counsel and not to believe Roberts.

Finally, Roberts alleges his counsel failed to contact witnesses and have them present at trial. However, his counsel testified that he did attempt to contact witnesses. He also testified that Roberts did not supply the names of any "alibi" witnesses nor was alibi a defense at the trial.[8] It is well settled that the mere failure to subpoena witnesses is not incompetence. *Delph v. State* (1975), 263 Ind. 385, 332 N.E.2d 783; *Wynn v. State, supra.* Though Roberts alleges his counsel failed to contact and utilize certain witnesses, neither his petition nor his testimony at the post-conviction hearing reveal what these witnesses would have testified to had they been present. The petitioner for post-conviction relief must show prejudice. *Baker v. State, supra; Crisp v. State* (1979), Ind., 394 N.E.2d 115. Roberts failed to meet this requirement.

This Court has scrutinized both the record of Roberts' trial and the record of his post-conviction relief hearing. We conclude that his allegation of not having adequate legal representation to be without merit. Roberts presented no convincing evidence of incompetency. There clearly is abundant evidence to support the conclusion of the

8. At trial, Roberts forwarded the contention the State's witnesses "mis-identified" him as the perpetrator of the robbery.

9. We further note—in addition to the evidence already discussed—Roberts' trial counsel re-

trial court that Roberts' trial did not result in a mockery of justice.[9] We therefore affirm the judgment of the trial court.

GARRARD, J., concurs.

HOFFMAN, P. J., concurs in result.

ceived all the discovery from the State, pursued a motion to suppress the in-court identification of Roberts by the State's key witness, and vigorously cross-examined all of the State's witnesses.